Walter H. Walker, III (SB #63117)
Jeffrey S. Walker, (SB #333335)
WALKER, HAMILTON & KEARNS LLP
50 Francisco Street, Suite 460
San Francisco, CA 94133
Tel: (415) 986-3339
Fax: (415) 986-1618
E-Mail: jeff@whk-law.com; e-service@whk-law.com

Eric H. Schweitzer (SB #179776)
SCHWEITZER & DAVIDIAN, PC
620 DeWitt, #102
Clovis, CA 93612
Tel:  (559) 322-1500
Fax:  (559) 322-1551
E-Mail: lawyericisin@yahoo.com

Attorneys for PLAINTIFF LIZA GOLD

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZA GOLD, individually and as successor in interest to ARI GOLD.<br><br>Plaintiff,<br>v.<br>CALIFORNIA HIGHWAY PATROL, CHRISTOPHER WEAVER, KRISTI CHO, OWEN ROGERS, AND DOES 1-15, INCLUSIVE<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL; DECLARATION OF LIZA GOLD**<br><br>1. **Battery**<br>2. **Wrongful Death (Negligence)**<br>3. **Negligent Hiring, Training, and Supervision**<br>4. **Bane Act Violation (Cal. Civ. Code § 52.1)**<br>5. **Constitutional Violation (42 U.S.C. 1983.)** |

**INTRODUCTION**

1.  This is a civil rights wrongful death/survivor action for money damages arising from the death of decedent ARI GOLD from the injuries he received on January 17, 2020, in Salinas,

California, against all defendants for violations of California tort law and United States Constitutionally guaranteed rights. ARI GOLD was 27 years old at the time of his death, unmarried and without issue. ARI GOLD's mother, LIZA GOLD brings suit in her individual capacity as well as in her capacity as successor in interest to ARI GOLD.

**JURISDICTION**

2.　This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution and California wrongful death and survivorship law. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

**VENUE AND DIVISIONAL ASSIGNMENT**

3.　The injuries alleged herein occurred in the City of Salinas, County of Monterey, State of California. Venue in this Court is proper pursuant to 28 U.S.C. 1391(b)(2). The San Jose Division is the proper Divisional Assignment pursuant to Northern District Local Rule of Court rule 3-2(e).

**PRIOR ACTIONS AND ADMINISTRATIVE REQUIREMENTS**

4.　Pursuant to California Government Code section 910, et seq., plaintiff ARI GOLD complied with the prerequisites of the California Tort Claims Act and timely filed a claim with the State of California on or about January 17, 2020. The claim was denied on or about January 23, 2020.

5.　On March 13, 2020, plaintiff ARI GOLD filed a complaint for damages in the Superior Court of California for the County of Monterey as Case No. 20CV001036.

6.　On April 30, 2020, the action was removed from the Superior Court of California and transferred to the Northern District of California for further proceedings as Case no. 3:20-cv-029990-JD. (Hereinafter, *"Gold v. CHP I"*)

Case 3:23-cv-03414-RFL   Document 1   Filed 07/07/23   Page 3 of 15

7. On May 7, 2020, the State of California answered the complaint. (*Gold v. CHP I* at Document 4.) The State of California raised the law under *Heck v. Humphrey,* 512 U.S. 477 (1994), *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) and Cal. Gov't Code § 945.3 to assert that plaintiff was legally barred from bringing a civil suit while a criminal action against his conduct on that day was pending.

8. On December 3, 2020, the Northern District of California stayed the case during the pendency of the criminal trial against plaintiff ARI GOLD. (*Gold v. CHP I* at Document 31.)

9. On October 25, 2022, ARI GOLD was convicted for his alleged actions on the date of the incident giving rise to this complaint. (Monterey Superior Court Case No. 19CR008974.) ARI GOLD noticed an appeal of that conviction on January 26, 2023. (Court of Appeal Case No. H050764, 6th Appellate District.)

10. On December 14, 2022, ARI GOLD, by and through his attorneys, stipulated to dismissal of the action without prejudice based on the unavailability of civil remedy in light of his criminal conviction. (*Gold v. CHP I* at Document 57.) In exchange, the STATE OF CALIFORNIA stipulated that the Statute of Limitations for this action would be tolled during the pendency of the appeal. It was further stipulated that the Statute of Limitations would "re-start" when and if the Court of Appeal issues an order overturning the conviction.

11. On January 10, 2023, while his appeal was pending, ARI GOLD died. As a result of his death, the Court of Appeal abated the cause and dismissed the appeal on March 2, 2023. The Court of Appeal issued a remittitur directing the trial court to enter an order to that effect.

12. On June 7, 2023, the remittitur was filed in the Superior Court transferring jurisdiction back to the trial court for entry of that order.

**PARTIES**

13. Plaintiff ARI GOLD is deceased.

14. Plaintiff LIZA GOLD is the natural parent, heir, successor in interest and survivor of ARI GOLD. She is a person described in California Code of Civil Procedure § 377.60(a) as a person

who may bring a wrongful death action and would be entitled to the property of the decedent by intestate succession. In her own right, she brings a claim for Wrongful Death and Survivorship and her claim under 42 U.S.C. § 1983 for deliberate indifference to her constitutionally protected interest in the companionship of her son. She brings her claims under 42 U.S.C. § 1983 as successor in interest to ARI GOLD for violations of ARI GOLD's Constitutional rights.

15. Defendant Owen Rogers is the father of ARI GOLD and is named as a nominal defendant for notice purposes only.

16. Defendant California Highway Patrol ("CHP") is an entity of the State of California.

17. Defendants CHRISTOPHER WEAVER ("WEAVER") and KRISTI CHO ("CHO") were, at all times relevant, law enforcement officers employed by the CHP. Each is sued in his or her capacity as a peace officer. By engaging in the conduct described herein, each of these defendants exceeded the authority vested in him or her as a peace officer under the United States Constitution and as employees of the State of California and its law enforcement department. These defendants are also sued in their individual capacity under 42 U.S.C. 1983.

18. The true names of defendants identified as DOES 1 through 5, inclusive, are presently unknown to plaintiffs. The plaintiffs allege that each of these DOE defendants was responsible for and caused the acts and injuries alleged herein. Plaintiffs allege that these DOE defendants were directly involved as law enforcement officers on the scene when the incidents alleged herein took place and participated in the excessive force inflicted upon ARI GOLD, which resulted in his death.

19. The true names and identities of defendants identified as DOES 6 through 10, inclusive, are presently unknown to plaintiffs. The plaintiffs allege on information and belief that each of these DOE defendants was responsible for and caused the acts and injuries alleged herein. Plaintiffs allege on information and belief that each of these DOE defendants was, at all relevant times, the employee or agent of defendant CHP. They were responsible for the supervision, management, training, monitoring, and control of the individually named officer defendants and

DOES 1 through 5, and acted to deprive plaintiffs of such supervision, management, training, monitoring, and control, thus resulting in the actions asserted herein and the damages caused.

20. The true names of defendants identified as DOES 11 through 15, inclusive, are presently unknown to the plaintiffs. The plaintiffs are informed and believe that each of these DOE defendants was responsible for and caused the acts and injuries alleged herein. Each of these DOE defendants was, at all relevant times, the employee or agent of the defendant CHP and was responsible for the promulgation, implementation, maintenance, sanctioning, condoning, perpetuation, and/or ratification of policies, procedures, practices, and/or customs, both de facto and explicit, which resulted in the injuries sustained by ARI GOLD. These DOE defendants were also responsible for the administration of the CHP and for selecting, hiring, training, and supervising persons working for and within the CHP, including all other defendants herein.

21. At all relevant times the defendants, and each of them, were acting under color of laws, statutes, ordinances, policies, practices, customs and usage of the State of California or the CHP.

22. Plaintiffs are further informed and believe, and thereon allege, that at all relevant times, each defendant was completely dominated and controlled by his/her/its co-defendants and each was the alter-ego of the other as to the events set forth herein. Defendant CHP is liable for any and all wrongful acts committed by any individual defendant pursuant to California Government Code § 815.2.

**GENERAL ALLEGATIONS**

23. Plaintiffs repeat and reallege each allegation in paragraphs 1 through 21 of this complaint as though fully set forth herein.

24. On July 23, 2019, plaintiff ARI GOLD, was suffering from a mental health crisis, manifesting in disabling paranoia.

25. During that crisis, he took a truck belonging to another without permission and drove it approximately one-and-a-half miles to his grandmother's house on Estoque Place in Salinas, California. While driving there, ARI GOLD may have struck a parked vehicle without stopping.

26. Upon arriving at his grandmother's house, ARI GOLD sought refuge from the threat that he perceived in his mind by going inside the house where he knew he was always welcome.

27. A person claiming to have witnessed the collision called 911. At or about 7:00 PM, CHP officers CHRISTOPHER WEAVER ("WEAVER") and KRISTI CHO ("CHO") were put on notice.

28. At or about 7:18 PM, WEAVER arrived at 22484 Estoque Place where ARI GOLD had left the truck he had been driving. After speaking to neighbors, WEAVER peered through the windows of the residence.

29. Officer WEAVER called his supervisor, SGT. CHRIS PIA, and informed him of the situation. SGT. PIA instructed him to contact the Monterey County Sherriff's Office ("MCSO") to get a K-9 unit and sheriff's deputies to clear the house.

30. At or about 7:21 PM, while WEAVER was speaking with SGT. PIA, CHO arrived at 22484 Estoque Place.

31. WEAVER and CHO did not wait for the arrival of sheriff's deputies or a K-9 unit before beginning to search in and around the residence. For approximately 10 minutes, CHO and WEAVER searched the exterior of the residence.

32. At or about 7:32 PM, ARI GOLD's grandmother arrived at her home. She spoke to CHO and WEAVER and explained that she did not recognize the truck that was in her driveway and was not expecting anybody to be in her house. She provided the officers with a key to the front door and consent to search her residence.

33. Officers WEAVER and CHO were not experienced in searching a residence for suspects.

34. At or about 7:38 PM, CHO and WEAVER entered the residence with their guns drawn. No MCSO deputies had arrived at the scene. No K-9 unit had arrived at the scene. Neither WEAVER nor CHO made any attempts to determine the location or availability of such units.

35. The residence was equipped with several security cameras. Before entering the house, CHO and WEAVER did not attempt to review the footage of the security cameras.

36. Before entering the house, CHO and WEAVER did not attempt to ascertain whether there were weapons in the house.

37. Before entering the house, CHO and WEAVER did not make any attempt or provide any opportunity to have ARI GOLD surrender himself peacefully.

38. Before entering the house, CHO and WEAVER did not make any attempt to create a secure perimeter while waiting for backup.

39. Before entering the house, CHO and WEAVER did not perceive any imminent or immediate threat to themselves or others.

40. Officers CHO and WEAVER searched the house for approximately four minutes. At or about 7:42 PM both officers exited the residence with their guns holstered. At this time neither officer perceived a threat.

41. During the search of the house it was discovered that one of the interior doors was locked. After exiting the house and confirming with ARI GOLD's grandmother that the door is not normally locked, both officers reentered the house at or about 7:44 PM.

42. Upon reentering the residence, WEAVER approached the locked interior door and defeated the lock using his health insurance identification card. Upon defeating the interior lock, WEAVER and CHO gained access to the master bedroom.

43. While clearing the master bedroom, CHO noticed that the door to the adjoining bathroom was not closed. CHO entered the small bathroom and saw the legs of ARI GOLD in the shower area behind a shower curtain.

44. Upon locating ARI GOLD, CHO did not issue any commands or provide an opportunity to surrender peacefully.

45. After identifying the location of the suspect within the shower area, CHO continued to advance toward ARI GOLD, and threw back the shower curtain revealing his face.

46. ARI GOLD was holding a handgun that he had gotten from within the residence.

47. Upon revealing ARI GOLD, CHO shouted commands to put his hands in the air. ARI GOLD complied by throwing the gun he was holding away from him and raising his hands in the air.

48. Officer CHO, startled by ARI GOLD's compliance, stepped backward and tripped. As she fell, she began to fire her gun at ARI GOLD and randomly about the room. In total, she fired 16 shots at the unarmed ARI GOLD.

49. Officer WEAVER, reacting to the sound of CHO's gunfire, also began to fire his gun. Officer WEAVER began to shoot through the wall of the bathroom with the intent of killing anybody that was alive in there at the time. WEAVER fired 28 shots through the bathroom wall, which required reloading his weapon at least one time.

50. At the time WEAVER began shooting, he had not seen ARI GOLD.

51. At the time WEAVER began shooting, he was not aware who or what was in the bathroom. He had not identified any threats.

52. At no time did ARI GOLD ever fire a gun. By the time WEAVER and CHO began to fire at ARI GOLD, he was unarmed and complying with the orders of CHO.

53. Of the 44 shots that were fired by the two officers, two of them struck ARI GOLD. One bullet struck him in the left hip, causing injury. Another bullet struck him in the upper spine causing instantaneous quadriplegia. ARI GOLD never recovered from the bullet lodged in his neck.

**FIRST CAUSE OF ACTION—Battery**

54. The plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 53 of this Complaint as though fully set forth at this point.

55. Defendants WEAVER and CHO, while acting within the course and scope of their duties, violently, wrongfully, and intentionally used excessive and unreasonable force against ARI GOLD, including gunfire. These actions were done with the intent to inflict great bodily injury, including potentially fatal injuries. These defendants had no legal justification for using excessive

and unreasonable force against ARI GOLD while carrying out their official duties. Further, they failed to utilize available non-lethal means to resolve the incident. Both prior to and during the time in which ARI GOLD was shot, he did not consent to the excessive force used upon him. In committing the acts described herein, defendants subjected ARI GOLD to unreasonable harm to his person, in violation of California Civil Code § 43.

56. As a direct and proximate result of the conduct of defendants WEAVER and CHO, ARI GOLD experienced severe bodily injury, emotional distress, pain and suffering.

57. As a direct and proximate result of the conduct of defendants WEAVER and CHO, ARI GOLD died.

58. Defendant CHP is vicariously liable for the wrongful acts of its officers pursuant to §815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

59. The conduct of the officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of ARI GOLD, thereby entitling plaintiffs to an award of compensatory damages, including general and special damages. For the same reasons, plaintiffs are entitled to an award of exemplary and punitive damages against the named defendants in their individual capacities.

**SECOND CAUSE OF ACTION—Wrongful Death (Negligence)**
**California Civil Code of Procedure §377.60 and §377.61**

60. The plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 59 as though fully set forth at this point.

61. Each defendant owed the plaintiffs a duty to exercise reasonable and ordinary care in the operation of their firearms and weapons, and in the selection and execution of police procedures related to the arrest and detention of persons, particularly those experiencing a mental health crisis. The defendants negligently and recklessly breached their duty to use reasonable and ordinary care

in committing the actions and inactions alleged herein, which include, but are not limited to, negligently failing to determine that ARI GOLD did not pose an immediate or even imminent threat of death or physical harm to anyone before he was shot multiple times. The defendants negligently inflicted great bodily injury upon ARI GOLD and negligently employed deadly force against him when the same was unnecessary and unlawful. The defendants were negligent in the following acts or omissions:

    a) The inept tactics and handling of the incident by the defendants who were at the scene;

    b) The unwarranted and avoidable use of deadly force against ARI GOLD by the defendants;

    c) The failure by defendants CHP and DOES to properly train and supervise their employees.

    d) The actions of defendants CHP and DOES to promulgate and perpetuate policies, both de facto and explicit, which resulted in the injuries sustained by the plaintiffs;

    e) The failure by the defendants and each of them to develop a tactically sound plan for approaching the decedent.

62. The defendants' negligent conduct and negligent decisions led to numerous tactical failings including, but not limited to, failure to take cover, poor control of gunfire, poor targeting of fire, and negligent assessment and reassessment of the alleged threat presented by ARI GOLD.

63. As alleged herein, the shooting of the decedent was a proximate result of the absence of due care for the safety of others and was done in a reckless, unlawful, and/or negligent manner, and was without legal or just cause. The defendants, either individually, or by and through their respective agents and employees, directly and proximately caused pain, shock, suffering, injury and death to ARI GOLD.

64. As an actual, direct, and proximate result of the defendants' negligence, ARI GOLD was needlessly and avoidably injured and killed.

65. The plaintiff brings this action pursuant to California Code of Civil Procedure §§377.60 and 377.61 and claims damages from the defendants for all of his injuries and losses sustained on the date of the incident and into the future.

66. In addition to liability for its own negligence, defendant CHP is vicariously liable for the wrongful acts of each individual defendant pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

**THIRD CAUSE OF ACTION—NEGLIGENT HIRING, TRAINING, AND SUPERVISION**

**California Government Code Sections 815.2(a) and 820(a)**

67. Plaintiffs repeat and reallege each and every allegation in paragraphs 1-66, inclusive, as though fully set forth at this point.

68. Plaintiffs are informed and believe, and thereon allege, that on and before July 23, 2019, those defendants who were responsible for hiring, training, and/or supervising the defendants who were at the scene on the day ARI GOLD was shot, had negligently hired, trained, supervised, employed, and/or managed said defendants and knew or, in the exercise of reasonable diligence, should have known, that said defendants were dangerous and violent employees and/or prone to use excessive force without reasonable justification, and in a manner that would demonstrate callous disregard for the rights and safety of civilian citizens, and assault and batter persons, and/or use unnecessary, unreasonable, deadly, and/or unlawful physical force without reasonable justification.

69. Plaintiffs are informed and believe, and thereon allege, that defendant CHP, by and through its officers, managers, or other officials capable of creating and enforcing policies, ratified the wrongful conduct of the named and DOE defendants after it had actual knowledge of the wrongful nature of that conduct.

70. As a direct and proximate cause of the acts alleged herein, ARI GOLD suffered severe bodily injury and death. Plaintiff was further damaged as a proximate result of the aforesaid acts and omissions in an amount and manner to be shown according to proof at trial.

## FOURTH CAUSE OF ACTION—Bane Act Violation

## California Civil Code §52.1

71. The plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 70 as though fully set forth at this point.

72. The Bane Act serves to redress deprivation, under color of statute, ordinance, regulation, policy, custom, practice or usage, of rights, privileges, and immunities secured by the Constitution and laws of California including, but not limited to, the right to be free from violence and threats of violence.

73. Defendants WEAVER and CHO, and any subsequently identified DOE Officers, while working for defendant CHP, and acting within the course and scope of their duties, interfered with the rights of ARI GOLD to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

74. As a result of the violence, threats, coercion and intimidation by the defendants, ARI GOLD endured severe pain, suffering and economic loss as detailed herein. As a further result of the alleged conduct, LIZA GOLD has been deprived of the care, comfort, and society of her son.

75. Despite the fact that defendant CHP knew or should have known that these acts, omissions, decisions, practices, customs, and policies were being carried out by its agents and employees, it has taken no steps to acknowledge and prevent this course of misconduct, to make redress to the plaintiff, and has failed to make sufficient disciplinary actions against the involved employees. As such, defendant CHP has ratified the wrongful conduct and customs resulting in violations of GOLD's civil rights.

76. Defendant CHP is vicariously liable for the wrongful acts of the named and DOE defendants pursuant to § 851.2 (a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

77. The conduct of the defendant officers in their individual capacities was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the plaintiff, entitling plaintiffs to an award of exemplary and punitive damages.

**FIFTH CAUSE OF ACTION—Unlawful Search and Use of Excessive Force**
**42 U.S.C. §1983; Amendment IV through Amendment XIV of the Constitution of the United States**

78. The plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 77 of this Complaint as though fully set forth at this point.

79. At all relevant times herein described, the conduct of all defendants was subject to 42 U.S.C. section 1983 and ARI GOLD had the right to be secure in his person and effects against unlawful searches and seizures, including the use of excessive force. The unconstitutional search, plus the excessive and unreasonable force used against ARI GOLD deprived him of his right to be secure against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the U.S. Constitution and made applicable to state actors by the Fourteenth Amendment. Because of the unlawful search and excessive force purposefully utilized against the plaintiff, he suffered serious injuries, including paralysis and death. Further, because of this conduct, plaintiff LIZA GOLD has been deprived of the care, comfort, and society of her son.

80. ARI GOLD was not an immediate threat when the defendants entered the residence where he was shot.

81. At the time ARI GOLD was shot, the defendants were not under immediate threat of serious physical injury, nor were they incapable of neutralizing or effectuating the seizure of ARI GOLD using any of a variety of available less-than-lethal means or strategies. The force used by

the defendants was unnecessary, excessive, and unreasonable under the totality of the circumstances.

82. The conduct of the defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of the plaintiff and therefore warrants the award of exemplary and punitive damages to the plaintiffs. Accordingly, the defendants are liable to the plaintiff for compensatory, including general and special, damages, as well as punitive damages under 42 U.S.C. Section 1983 against the defendants in their individual capacities.

**PRAYER**

WHEREFORE, the plaintiff prays that this Court enter judgment after trial by jury in her favor and against defendants CHP, WEAVER and CHO, and any subsequently identified DOE Defendants in their individual capacities, as follows:

1. For compensatory damages against all defendants, including general and special damages, in an amount to be proven at trial;

2. For punitive damages against all defendants sued in their individual capacities in an amount to be proven at trial sufficient to punish and deter;

3. For reasonable costs and attorneys' fees pursuant to any applicable statute, regulation, ordinance, or other law, including 42 § 1983, that provides for reasonable costs and/or attorneys' fees;

4. For costs of suit;

5. For pre-judgment interest according to law; and

6. For such other and further relief as may be deemed just and proper by this Court.

DATED: June 29, 2023                                    WALKER, HAMILTON, & KEARNS, LLP

By: __/s/ Jeffrey S. Walker_____
    Walter H. Walker, III
    Jeffrey S. Walker
    Attorneys for plaintiff LIZA GOLD
    individually and as successor in
    interest to ARI GOLD.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues herein alleged.

DATED: June 29, 2023                    WALKER, HAMILTON, & KEARNS, LLP


By: __/s/ Jeffrey S. Walker_____
    Walter H. Walker, III
    Jeffrey S. Walker
    Attorneys for plaintiff LIZA GOLD
    individually and as successor in
    interest to ARI GOLD.