1  Walter H. Walker, III (SB #63117)
   Jeffrey S. Walker, (SB #333335)
2  **WALKER, HAMILTON & KEARNS LLP**
   50 Francisco Street, Suite 460
3  San Francisco, CA 94133
   Tel: (415) 986-3339
4  Fax: (415) 986-1618
   E-Mail:  jeff@whk-law.com; e-service@whk-law.com
5
   Eric H. Schweitzer (SB #179776)
6  SCHWEITZER & DAVIDIAN, PC
   620 DeWitt, #102
7  Clovis, CA 93612
   Tel:  (559) 322-1500
8  Fax:  (559) 322-1551
   E-Mail:  lawyericisin@yahoo.com
9
10 Attorneys for PLAINTIFF Liza Gold

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13

14

15 | Liza Gold, individually and as successor in | Case No. 3:23-cv-03414-RFL
   | interest to Ari Gold,
16 |                                              | Assigned to:
   |                                              | Hon. District Judge Rita F. Lin
17 |                        Plaintiff,
   |          v.                                  | **PLAINTIFF'S NOTICE OF MOTION**
18 |                                              | **AND MOTION FOR ATTORNEYS'**
   |                                              | **FEES**
19 | Christopher Weaver, Kristi Cho, The California
   | Highway Patrol, and DOES 1-15, inclusive     | *Filed concurrently with supporting*
20 |                                              | *declarations and exhibits*
   |                       Defendants.
21 |
   |                                              | Date:        August 19, 2025
22 |                                              | Time:        10:00 a.m.
   |                                              | Dept.:       15
23 |
24

25

26

27

28
   ─────────────────────────────────────────

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF**
**RECORD:**

**PLEASE TAKE NOTICE** that on August 19, 2025, at 10:00 a.m. or as soon thereafter
as is practicable for this Honorable Court, Plaintiff will and hereby does move this Court for an
Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, Federal
Rule of Civil Procedure 54(d) in the enhanced lodestar amount of **$1,636,527.00**. In addition to
requesting compensation for the time spent in litigating this case and bringing it to trial, Plaintiff is
also requesting compensation for her counsel's time necessarily spent in drafting this motion and
the anticipated reply brief, as well as compensation for their time spent opposing Defendants' post-
trial motions and any appeal, and appearing at any related hearings. This Motion is based on
grounds that the Plaintiff was the prevailing party at trial on her Fourth Amendment civil rights
claim and is entitled to statutory attorneys' fees as a matter of law.

**Statement of Meet and Confer Compliance**: This motion is made following email
correspondence between counsel for the parties, indicating that Plaintiff intended to file a motion
requesting attorneys' fees.

This motion is based on this Notice of Motion, the attached Memorandum of Points
and Authorities, the concurrently filed declarations, the attached exhibits, the pleadings on
file herein, and such other oral and documentary evidence as may be presented at the time
of the hearing.

Respectfully submitted,

Dated: June 19, 2025                    WALKER, HAMILTON & KEARNS, LLP


By: _____
                                        Walter H. Walker, III
                                        Attorneys for Plaintiff

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.    INTRODUCTION ............................................................................................... 1

II.   PLAINTIFF IS ENTITLED TO FEES UNDER 42 U.S.C. §1983 ......................... 1

    A.    Plaintiff Is the Prevailing Party Entitled to Attorneys' Fees Under
        42 U.S.C. § 1988 ............................................................................. 1

    B.    Legislative History of 42 U.S.C. § 1988 ................................................ 2

    C.    The Supreme Court's Standard in *Hensley v. Eckerhart* ......................... 3

    D.    Plaintiff Is the Prevailing Party ........................................................... 5

III.  PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE ................... 6

    A.    Counsel's Hours Are Reasonable Given the Time and Labor Required
        and Preclusion from Other Employment .................................................. 7

    B.    Skill Necessary to Perform Proper Legal Services Given the
        Complexity and Undesirability of the Case, and Risk of
        Non-Payment ........................................................................................ 10

    C.    Counsel's Hourly Rates Are Reasonable Considering the Customary
        Fee, Contingency Basis, Experience and Reputation, and Awards in
        Similar Cases. ....................................................................................... 13

        i.    Hourly Rate for Walter H. Walker, III ......................................... 15

        ii.   Hourly Rates for Other Attorneys at Walker, Hamilton & Kearns
            ......................................................................................... 16

        iii.  Hourly Rates for Staff at Walker, Hamilton & Kearns ................. 17

        iv.   Hourly Rate for Eric Schweitzer .................................................. 18

    D.    Plaintiffs' Counsel Are Entitled to Fees and Costs for Litigating the
        Instant Motion ......................................................................................... 1

IV.   A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE ..................................... 19

V.    CONCLUSION .................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3   *Amaral v. Cintas Corp. No. 2,*
          163 Cal. App. 4th 1157 (Cal. Ct. App. 2008) ........................................ 20

4   *Arizona v. ASARCO LLC,*
          773 F.3d 1050 (9th Cir. 2014) ..................................................................... 3

5   *Ballen v. City of Redmond,*
          466 F.3d 736 (9th Cir. 2006) ....................................................................... 6

6   *Beaty v. BET Holdings, Inc.,*
          222 F.3d 607 (9th Cir. 2000) ....................................................................... 7

7   *Bell v. Farmers Ins. Exch.,*

8         No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ............... 22

9   *Bender v. Cty. of Los Angeles,*
          217 Cal. App. 4th 968 (2013) ............................................................... 21, 22

10  *Blum v. Stenson,*
          465 U.S. 886 (1984) ....................................................................... 6, 13, 15

11  *Brewster v. Dukakis,*
          786 F.2d 16 (1st Cir. 1986) ........................................................................ 4

12  *Camacho v. Bridgeport Financial, Inc.,*
          523 F.3d 973 (9th Cir. 2018) ..................................................................... 15

13  *Chavez v. City of Los Angeles,*
          47 Cal. 4th 970 (2010) ................................................................................ 5

14  *Chavez v. Netflix, Inc.,*
          162 Cal. App. 4th 43 (Cal. Ct. App. 2008) ............................................... 22

15  *City of Riverside v. Rivera,*
          477 U.S. 561 (1986) ............................................................................. 4, 14

16  *Clark v. City of Los Angeles,*
          803 F.2d 987 (9th Cir. 1986) ..................................................................... 18

17  *Colgan v. Leatherman Tool Grp., Inc.,*
          No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) ............ 22

18  *Collins v. Chandler Unified Sch. Dist.,*
          644 F.2d 759 (9th Cir. 1981) ....................................................................... 3

19  *Crommie v. PUC,*
          840 F. Supp. 719 (N.D. Cal. 1994) ........................................................... 22

20  *Dang v. Cross,*
          422 F.3d 800 (9th Cir. 2005) ..................................................................... 13

21  *Davis v. City & County of San Francisco,*
          976 F.2d 1536 (9th Cir. 1992)...................................................................... 5

22  *Davis v. Prison Health Svcs.,*
          No. C 09–2629, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ................ 2

23  *Dennis v. Chang,*
          611 F.2d 1302 (9th Cir. 1980) ..................................................................... 3

24  *Estate of Diaz v. City of Anaheim,*
          840 F.3d 592 (9th Cir. 2016)........................................................................ 9

25

26

27

28

*Fair Housing of Marin v. Combs,*
    285 F.3d 899 (9th Cir. 2002) ........................................................ 5
*Farrar v. Hobby,*
    506 U.S. 103 (1992) ..................................................................... 6
*French v. City of Los Angeles,*
    No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10, 2022) .......... 16
*Gates v. Deukmjian,*
    987 F.2d 1392 (9th Cir. 1992)............................................... 5, 14, 16
*Glass v. Pfeffer,*
    849 F.2d 1261 (10th Cir. 1988) .................................................. 18
*Graham v. Daimler Chrysler Corp.,*
    34 Cal. 4th 553 (2004) .............................................................. 20
*Gregory v. Oliver,*
    2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ................................ 9
*Guam Society of Obstetricians & Gynecologists v. Ada,*
    100 F.3d 691 (9th Cir. 1996) ..................................................... 4
*Hall v. Cole,*
    412 U.S. 1 (1973) ....................................................................... 3
*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ........................................................ 18
*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................ 3, 4, 5, 6
*Hernandez v. George,*
    793 F.2d 264 (10th Cir. 1986) .................................................. 18
*Hernandez v. Kalinowski,*
    146 F.3d 196 (3rd Cir. 1998) .................................................... 18
*Herrington v. Cty. Of Sonoma,*
    883 F.2d 739 (9th Cir. 1989)..................................................... 2
*Hiken v. Dep't of Def.,*
    836 F.3d 1037 (9th Cir. 2016) .................................................. 15
*Horsford v. Bd. of Trustees of Cal. State Univ.,*
    132 Cal. App. 4th 359 (Cal. Ct. App. 2005) .................... 8, 20, 21
*In re Immune Response Sec. Litig.,*
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ...................................... 19
*Jordan v. Multnomah Cnty.,*
    815 F.2d 1258 (9th Cir. 1987) ................................................... 7
*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ................................................... 6, 7
*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) .............................................. 7, 19, 20, 22
*Leuzinger v. Cnty. of Lake,*
    No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) ............ 22
*Lund v. Affleck,*
    587 F.2d 75 (1st Cir.1978) ........................................................ 18
*Mangold v. PUC,*
    67 F.3d 1470 (9th Cir. 1995) .................................................... 22

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009).................................................. 23
*McGrath v. County of Nevada*,
  67 F.3d 248 (9th Cir. 1995) ...................................................... 6
*Mendez v. County of San Bernardino*,
  540 F.3d 1109 (9th Cir. 2009)................................................... 3
*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989) ................................................................ 16
*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ..................................................... 23
*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008)............................................. 8, 15
*National Ass'n of Corder v. Gates*,
  688 F. Supp. 1418 (C.D. Cal. 1988) ......................................... 5
*Odima v. Westin Tucson Hotel*,
  53 F.3d 1484 (9th Cir. 1995) .................................................... 4
*Orr v. Brame*,
  727 F. App'x 265 (9th Cir. 2018) ............................................ 23
*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
  No. EDCV 07–1512 ABC (OPx), 2012 WL 843623 (C.D. Cal. Feb. 16, 2012) ...... 15
*Peak-Las Positas Partners v. Bollag*,
  171 Cal. App. 4th 101 (2009) .................................................... 8
*Pellegrino v. Robert Half Int'l, Inc.*,
  182 Cal. App. 4th 278 (Cal. Ct. App. 2010) ............................ 22
*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*,
  483 U.S. 711 (1987) ................................................................ 16
*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
  163 Cal. App. 4th 550 (Cal. Ct. App. 2008) .............................. 9
*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010)................................................... 13
*Ramon v. County of Santa Clara*,
  173 Cal. App. 4th 915 (Cal. Ct. App. 2009) .............................. 8
*Rattary v. Favro*,
  97 Cal.App.5th 578 (2023) ....................................................... 17
*Roberts v. City of Honolulu*,
  938 F.3d 1020 (2019) .............................................................. 15
*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012 (C.D. Cal. 2014).................................. 20, 21
*Schwarz v. Secretary of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995)...................................................... 5
*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ............................................................... 21
*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ......................................................... 4, 13
*Sethy v. Alameda County Water Dist.*,
  602 F.2d 894 (9th Cir. 1979) .................................................... 3

*Texas Teachers v. Garland School Dist.*,
    489 U.S. 782 (1989) ........................................................................... 6
*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ............................................................. 13
*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ...................................................... 7, 13
*Uphold our Heritage v. Town of Woodside*,
    No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ........... 22
*Ustrak v. Fairman*,
    851 F.2d 983 (7th Cir. 1988) ............................................................. 5
*Vo v. Las Virgenes Municipal Utility Dist.*,
    79 Cal. App. 4th 440 (2000) ............................................................. 8
*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ........................................................... 13
*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ...................................... 22
*Wiersta v. Heffernan*,
    789 F.2d 968 (1st Cir. 1986) ............................................................. 9
*Wilson v. Union Pacific R. Co.*,
    56 F.3d 1226 (10th Cir. 1995) ........................................................... 9
*Zeigler v. Cnty. of San Luis Obispo*,
    No. CV179295MWFAFMX, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ............ 16

<u>Statutes</u>

42 U.S.C. § 1988 ........................................................... 1, 2, 3, 5, 6, 18

<u>Other Authorities</u>

S. Rep. No. 94-1011 (1976) ................................................... 14, 15

<u>Other</u>

1976 U.S. Code Cong. & Ad. News 5908 ........................................ 2, 15
Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session .......... 2, 15

### MEMORANDUM OF POINT AND AUTHORITIES

I.    **INTRODUCTION**

On May 28, 2025, the jury in this matter reached a verdict against Defendant Kristi Cho in favor of Plaintiff's Fourth Amendment claim for excessive force as well as for state law claims of negligence, assault, and intentional infliction of emotional distress.  The jury further found against Defendants Christopher Weaver and the California Highway Patrol for negligence. The jury awarded Plaintiff damages totaling $9,233,835.54.  As the prevailing party, Plaintiff now requests attorneys' fees pursuant to 42 U.S.C. §1988 in the amount of $818,263.50.

Plaintiff also requests that this Court apply a 2.0 multiplier to the attorneys' fees. The attorney fee award is justified by the significant verdict in Plaintiff's favor, Plaintiff's counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, and the extraordinary risk assumed by Plaintiff's counsel. Plaintiff litigated this case for over two years, with diligence and dedication to vindicating Ari Gold's constitutional rights, ultimately culminating in a very favorable result for Plaintiff. Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences. For these reasons and those set forth in detail below and in the accompanying declarations, Plaintiff's counsel are highly deserving of the full amount of the attorneys' fees requested herein.

II.    **PLAINTIFF IS ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW**

A.    **Plaintiff Is the Prevailing Party Entitled to Attorneys' Fees Under 42**

U.S.C. § 1988.

Plaintiff prevailed on her claims under the Fourth Amendment as the jury issued a verdict in her favor and awarded Plaintiff over $9.23 million dollars in damages. She is therefore entitled to prevailing party fees and expenses under 42 U.S.C. § 1988(b). *See Davis v. Prison Health Svcs.*, No. C 09– 9 2629, 2012 WL 4462520 at *8 (N.D. Cal. Sept. 25, 2012) (citing *Herrington v. Cty. Of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989)).

**B.   Legislative History of 42 U.S.C. § 1988.**

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. §1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's

discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

## C.    The Supreme Court's Standard in *Hensley v. Eckerhart*.

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. §1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they

do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, she is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)).

Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to

the party opposing fees to present equally specific countervailing evidence. *See Gates v.*

*Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976

F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345;

*National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and

rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d

899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th

Cir. 1995).

### D.    Plaintiff Is the Prevailing Party

Plaintiff is the prevailing party in this litigation, and a verdict was returned in Plaintiff's

favor on her claim under the Fourth Amendment. The jury awarded Plaintiff a total of

$9,233,835.54 in damages. Under 42 U.S.C. §1988 civil rights plaintiffs who have prevailed on

some significant issue in their litigation are entitled to an award of fees. *See, e.g.*, *Hensley*, 461

U.S. at 433; and see *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley*

and indicating that California law is "consistent" with it). Once the fee entitlement threshold has

been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should

recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on

the litigation, and indeed in some cases of exceptional success an enhanced award may be

justified." *Hensley*, 461 U.S. at 435. The appropriate rate is the "market rate," which is

demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id.*

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.

## III.    PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiplies the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)).  After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (and see *infra*). These twelve factors are:

1
2
3
4
5
6

(1) the time and labor required, (2) the novelty and difficulty of
the questions involved, (3) the skill requisite to perform the legal
service properly, (4) the preclusion of other employment by the
attorney due to acceptance of the case, (5) the customary fee, (6)
whether the fee is fixed or contingent, (7) time limitations
imposed by the client or the circumstances, (8) the amount
involved and the results obtained, (9) the experience, reputation,
and ability of the attorneys, (10) the 'undesirability' of the case,
(11) the nature and length of the professional relationship with
the client, and (12) awards in similar cases.

7    *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong

8    presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v.*

9    *Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815

10   F.2d 1258, 1262 (9th Cir. 1987)).

11
12

   **A.    Counsel's Hours Are Reasonable Given the Time and Labor Required
           and Preclusion from Other Employment.**

13        The total number of hours for which Plaintiff's counsel request compensation, reflected

14   in their declarations and billing logs, is reasonable. Under California law, every hour reasonably

15
16   spent on the case is compensable. "Absent circumstances rendering the award unjust, an attorney

17   fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including

18   those relating solely to the fee." *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (emphasis in original);

19   *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take

20   FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent

21   litigating a claim." (internal quotations omitted)). Hours are reasonable if "at the time rendered,

22
23   [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his

24   client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*,

25
26
27
28

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
3:23-cv-03414-RFL

682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making its determination, a court must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). In the instant case Plaintiff's attorneys have exercised billing judgment in several ways. Attorney hours that were duplicative,

unnecessary, or administrative in nature were either not claimed by attorneys or were reduced during the review of the billing records done for this Motion.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). Defendants cannot meet that burden. To the contrary, the hours for which Plaintiff's counsel request compensation were reasonably necessary for the prosecution of Plaintiff's claims for over two years, during which time Defendants never made a single concession.[1]

Plaintiff's counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence against the victim. See *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position, repeated twice to the Court, was that this was a "zero liability" case. From the outset and all the way through to when the jury returned its verdict, defendants claimed the case had no value, as was reflected in the fact that they twice attended Court-ordered settlement conferences and offered $0 each time. Thus, Plaintiff's counsel correctly anticipated that the case would have to be tried and took the steps to do so successfully. That came at a

---

[1] See, *e.g.,* Cho's claims that Ari Gold pulled a gun on her, that he never threw the gun away, and that she had control of her gun at all times while she was shooting at Ari; and see Weaver's claims that Ari darted in and out of the bathroom and that he then found Ari lying on his back with his chin on his chest and with a rifle pointed toward the door.

heavy cost and with great risk. First, Plaintiff bore the burden of proof and persuasion. This required obtaining and meticulously analyzing all the relevant documents and testimony including that which had been used to convict Ari Gold in criminal court. Plaintiff's counsel's burden was made eminently harder by the facts that defendants were not wearing body cameras, did not activate MVARs, made no recording of conversations with the homeowner and, indeed, took no statement from her either on the day of the shooting or at any time before she died.

With a dearth of evidence from any source other than the testimony of the participants and photographs of an altered scene, plaintiff had to obtain experts to deconstruct and then explain what happened. To that end, Plaintiff obtained the services of eight such experts and interviewed several others whose services she did not retain. At least 15 depositions were conducted in this case, and individual ones taken by defense counsel took seven hours.

Plaintiff's counsel not only invested their time but made a major economic commitment for this case. Mr. Walker compensated the attorneys and staff at Walker, Hamilton & Kearns throughout the more than two years that the office litigated this case, and incurred costs, including expert retention fees, without any interim payments from the Plaintiff or guarantee of success at trial. Plaintiff's counsel's close examination, organization, and analysis of the video recordings, audio dispatch recordings, photographs, reports, and transcripts proved worthwhile for the successful result for Plaintiff, which was made all the more remarkable by the fact that Ari Gold had lost his criminal trial where the burden was "beyond a reasonable doubt," and where the same facts were in play.

**B.    Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.**

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police. The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting this case at trial. This is especially true in light of the evidence and/or allegations that the decedent, Ari Gold, had a gun, was under the influence of methamphetamine, and threatened an officer's life. Such negative evidence would have daunted most any lawyer, yet Plaintiff's counsel achieved a successful result.

At Plaintiff's counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. They were aware that the previous attorney had resigned after the criminal conviction. Nevertheless, Walter Walker and Jeffrey Walker agreed to undertake representation. Despite the troubling evidence, Plaintiff's counsel ultimately won a favorable verdict for Plaintiff—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. To succeed, Plaintiff's counsel had to review an entire criminal trial transcript, undertake extensive discovery, overcome a summary judgment motion, retain, pay and consult with multiple experts.

They were met with extremely vigorous opposition. From the outset, defendants contended that the shooting by CHP officers was not only justified but heroic, that Ari Gold was drug-addled and posed a threat to Officer Cho that required her to empty her gun at him in close quarters and required Officer Weaver to shoot blindly through walls to save her life.

1    Defendants posed their argument of officer heroism so strongly that they caused the

2  Court to believe no Fourth Amendment or intentional act claims against Officer Weaver could be

3  put before the jury. Plaintiff's counsel worked with what we had, using a bathroom mock-up

4  exhibit to show how unreliable Officer Cho's version was of the discovery of Ari Gold, getting

5  Cho to change her story about how she supposedly opened the shower curtain, and exposing her

6  lack of credibility by getting her to testify that she had complete control of her gun as she put

7  bullets in the ceiling, the floor, the Jacuzzi, out a window at the other end of the house behind

8  her, and into a mirror next to Officer Weaver's head, without ever once hitting her target whom

9
10  she admitted to being less than five feet away from her when she started shooting.

11    As for Officer Weaver, Plaintiff's counsel exposed his unreliability by showing the

12  physical impossibility of his claim that Ari Gold darted in and out of the bathroom and somehow

13  ended up a quadriplegic lying on his back with a rifle across his chest and pointing at the

14  bathroom entrance. Further, Plaintiff's counsel showed how Weaver kept firing his gun blindly

15  though walls after Cho had stopped firing and when it was undisputed that Ari had never fired.

16  And Plaintiff's counsel skillfully turned Defendants' "big" evidence against them by pointing out

17  that the existence of two spent magazines in the adjoining bedroom meant that Cho was safely in

18  that room as Weaver continued firing his 28 shots at a man who was not firing back and whose

19
20  once-held gun was seen to be lying on the floor outside the bathroom.

21    Also in this regard, Plaintiff's counsel totally undermined both the credibility and the

22  knowledge of Defendants' only expert, Clarence Chapman, who admitted to being "pretty much

23  exclusively the expert for CHP," admitted charging $49,000 for his testimony, and nonetheless

24
25  showed up in both deposition and court without a thorough knowledge of the facts of the case.

26                                    12 of 24

27
28

It took extraordinary work to undermine the supposed authority of the two active duty officers and a former police chief turned advocate. Such extraordinary work took extraordinary time, and for this Defendants cannot complain. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

### C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.

Generally, the prevailing market rates in the relevant community in the forum where the district court sits govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Here, Plaintiff seeks hourly rates consistent with the very city in which the Court sits.

Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 10 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407.

Lead counsel, Walter Walker, is an extremely well-established member of the litigation community. He has been a litigator for 50 years, trying more than 100 cases. His first Federal trial was in this courthouse, a bench trial in 1981 in which Judge Schwarzer awarded $1,000,000 in a case that made front page headlines. (*Traub v. United States*.) In a jury trial in this courthouse before Judge Patel, he won $550,000 for an Israeli paratrooper who claimed PTSD

from a minor crash of a commercial airliner (*Ben-Shimol v. TWA*).  In Federal Court in Boston, he made national news by securing a multi-million-dollar verdict for the pilot and co-pilot of a commercial airliner that crashed into Boston Harbor. (*Hertzfeldt, et al. v. Massachusetts Port Authority.*)  In order to do this, it had to be proved that the pilots had been given the wrong information about landing conditions.  His four-and-a-half-month trial regarding the avalanche at Alpine Meadows Ski Area that killed seven people is the subject of a major documentary that can be seen on Netflix and that is going to be made into a motion picture by Martin Scorsese.  He has successfully handled multiple abuse of power cases against law enforcement officers, which is how and why this case was referred to him.  His younger partners, Jeffrey Walker and Clarissa Kearns, have been with him throughout their entire legal careers and are extremely good lawyers, whose talents complement his own.

As an elected fellow of virtually every prestigious trial lawyer organization, his hourly fees of $850 are considerably less than those of his peers, which are now running about $1400 per hour. (See **Exhibit 1**, attached hereto.)

Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913)).

14 of 24

### i.    Hourly Rate for Walter H. Walker, III

In determining what constitutes a reasonable fee in civil rights litigation, courts should consider the hourly rates that similarly skilled and experienced attorneys in private practice charge their paying clients. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate ........ "); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), recognized that compensation received several years after an attorney renders his or her services "is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 283. Accordingly, "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§1988]." *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 716 (1987) ("In setting fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

Thus, the Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See e.g., Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same).

      ii.     Hourly Rates for Other Attorneys at Walker, Hamilton & Kearns

Jeffrey Walker grew up in his father's law firm. A graduate of Trinity College in Hartford, Connecticut, he spent 10 years in theatre in Boston and New York City and one year teaching English in rural Thailand before going to law school at USF, where he graduated *cum*

*laude.* Before, during and after law school, he worked at Walker, Hamilton on all aspects of litigation, attending and assisting at multiple trials. Since becoming an attorney, he has been co-counsel on five trials and one binding arbitration. One of the trials in which he played a key role is now a published decision, *Rattary v. Favro,* 97 Cal.App.5th 578 (2023). His dedication and skill caused the firm to make him a partner in 2024. A rate of $450 per hour is well below the value he provided in preparing and co-trying the instant case.

Clarissa Kearns is a partner at Walker, Hamilton & Kearns. She is a *Magna Cum Laude* graduate of Wellesley College, and ranked 8th in her class at Golden Gate University School of Law. The firm has been fortunate to have had her intellect, attention to detail, and strong research and writing skills on a full-time basis for 14 years. She has served as co-counsel to Mr. Walker on three trials, has settled multiple, seven-figure cases throughout her career, and provided invaluable litigation support during the weeks leading up to trial, during trial, and after. A rate of $550 per hour is, once again, well below that charged by her peers.

      iii.    Hourly Rates for Staff at Walker, Hamilton & Kearns

Three staff members have worked extensively on this case over the past 27 months. Senior paralegal Marshall Kleiber did the research, Legal Assistant and Office Manager Serena Broussard prepared the motions and oppositions and other court documents while maintaining communications with all witnesses and potential witnesses and ensuring payments and other deliveries to the experts. Legal Assistant Jess Ibatuan assembled exhibits, maintained contact with the client and coordinated the distribution of documents, writings and correspondence. Fair and reasonable hourly rates for such experienced, dedicated and skilled assistants are $220 for Marshall Kleiber, $220 for Serena Broussard, and $110 for Jess Ibatuan.

iv.    Hourly Rate for Eric Schweitzer

Mr. Schweitzer is a 30-year trial attorney who was co-counsel at Ari Gold's criminal trial and who sought out and brought in the Walker firm to take over the civil case when the previous attorney resigned.  Mr. Schweitzer thereafter maintained contact with Jeffrey Walker and me, responding to inquiries regarding the criminal trial, its experts and evidence, and providing consultation on various aspects of the case, including issues pertaining to the client's emotional state, and defendants' presentation of issues.  A fair and reasonable rate for an attorney of Ms. Schweitzer's experience is $650.

**D.    Plaintiff's Counsel Are Entitled to Fees and Costs for Litigating the Instant Motion**

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiff's counsels are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested, and on all work anticipated in opposing any further post-trial motion filed by Defendants. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").

Plaintiff's counsel are also entitled to recover the reasonable litigation expenses incurred over the course of litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys

18 of 24

should recover reasonable out-of-pocket expenses of the type ordinarily billed to paying clients).

The expenses for which Plaintiff seeks reimbursement are detailed in Walter Walker's supporting declaration and, to date,[2] total $258,474.07. As explained in the supporting declaration, these unreimbursed expenses were necessary to the litigation and of the sort normally billed to hourly-paying clients and are thus fully reimbursable. *See, e.g., In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D. Cal. 2007).

Plaintiff's counsel will supplement and amend this instant Motion to include their hours spent on the anticipated reply brief, preparation for and appearance at the related hearing, and in opposing the post-trial motions filed by Defendants.

## IV.    A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE

The application of a 2.0 lodestar enhancement is justified in this case by the great risk counsel took that after hundreds of hours worked and hundreds of thousands of dollars spent, they would end up with no compensation or reimbursement for their work. Such risk commands a significant multiplier. In this case, "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis . . . [.]" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to

---

[2] Not all bills and invoices have been received. Plaintiff will request permission to supplement.

approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all. See *Graham*, *supra*, 34 Cal. 4th at 583-84. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. *See Ketchum*, *supra*, 24 Cal. 4th at 1132, 1138; *see also Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005). Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (Cal. Ct. App. 2008). As was said in *Ketchum*, 24 Cal. 4th at 1132-33, ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." Here, Plaintiff's requested multiplier is justified based on the great risk Plaintiff's counsel assumed in litigating this case on a contingency basis, the difficulty of the case, and based on counsels' demonstrated skill. Counsel invested over a thousand hours of work without any interim payments from Plaintiff and also risked costs paid out of pocket since the inception of this case. Many more hours and expenses promise to be put at risk should there be an appeal.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Conseulo B. Marshall applied a 2.0 multiplier to the

attorneys' fees, resulting in over $5 million in attorneys' fees payable to the Plaintiff's attorneys. The Ninth Circuit affirmed Judge Marshall's decision, approvingly stating that it was "based . . . on the substantial financial risk that appellees' counsel assumed all the while facing 'aggressive opposition' from appellants; and the opportunity costs the years-long litigation in this case required." The court expressly noted that it had considered the burden to California's taxpayers that the fee award would represent, and found that the award was justified given the factors described above and the importance of civil rights suits in protecting the public against abuses at the hands of "large or politically powerful defendants." *Rodriguez*, 96 F. Supp. at 1026. Refusing a multiplier in a civil rights case based only on the source of the fee would effectively immunize large or politically powerful defendants' engaging in conduct that harms the public. *Id.* (citing *Horsford*, 132 Cal. App. 4th at 399-401); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.").

Additionally, in *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 988 (2013), following a jury verdict for plaintiff, the Superior Court applied a 1.2 multiplier and awarded $989,258 in attorneys' fees. *Id.* at 976. Although that case included a Bane Act claim, the court of appeals' reasoning applies equally to the instant case:

> [C]ounsel put both their time and their purse at risk, investing capital to pay trial expenses; that the time invested limited trial counsel's availability for other cases; that counsel achieved a trial victory "against the united testimony of three deputy sheriffs, and over a vigorous defense"; and that their prosecution of the case was "tenacious, skillful and effective." The court acknowledged payment of the legal fees by the taxpayers counted against a high multiplier, but "every excessive force case in which a plaintiff

prevails encourages better supervision within our police agencies
and thus reinforces the constitutional protections to which citizens
are entitled.

*Bender*, at 988.

In light of the special difficulties presented in this case, the hard-fought litigation, and the public interest served by obtaining a verdict that brought justice to Plaintiff for the Defendants' behavior, a multiplier of 2.0 is appropriate here.

Many cases have awarded multipliers in civil rights and public interest litigation. *See, e.g.*, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (2.5 multiplier); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier regarding age discrimination actions), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th 11 Cir. 1995); *Uphold our Heritage v. Town of Woodside*, No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0 under § 1021.5); *Leuzinger v. Cnty. of Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0 in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in consumer class action); *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (multiplier of 2.0 in anti-SLAPP motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001) (multiplier of 1.42, recognizing multipliers as high as 4.0); *Bell v. Farmers Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833 multiplier in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278 (Cal. Ct. App. 2010) (multiplier of 1.75 in wage and hour case).

It is well-established that excessive force cases inure "a public benefit of deterring

unconstitutional conduct by law enforcement officials." *Orr v. Brame*, 727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its discretion where it reduced an attorney fee award and disregarded a long line of case law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). Nevertheless, these cases are extremely difficult to win and require plaintiff's lawyers to take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours of uncompensated time to such a highly risky case without the expectation that, if they are successful, they will be compensated for their risk with a fee that is significantly greater than if they had been paid hourly rates, win or lose. Thus, a multiplier is appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of **$1,636,527.00**. Plaintiffs also request that the Court award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including drafting the related reply and attending hearing on the motion for attorneys' fees, and for work performed on any post-trial motions filed by Defendants. The table below summarizes the fees requested, including the name of each biller, years of practice, the hourly rate, hours claimed, and the total for that biller. If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Years Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Walter H. Walker, III | 50 | $850.00 | 576.36 | $489,906.00 |

23 of 24

| Jeffrey S. Walker | 5 | $450.00 | 475.17 | $213,826.50 |
|---|---|---|---|---|
| Clarissa E. Kearns | 14 | $550.00 | 74.4 | $40,920.00 |
| Eric Schweitzer | 30 | $650.00 | 45.70 | $29,705.00 |
| Marshal Kleiber | Paralegal | $220.00 | 115.60 | $25,432.00 |
| Serena Broussard | Legal Assistant | $220.00 | 9.45 | $2,079.00 |
| Jess Ibatuan | Legal Assistant | $150.00 | 109.30 | $16,395.00 |
| TOTAL AS OF JUNE 18, 2025: | | | | $818,263.50 |
| WITH ENHANCEMENT: | | | | $1,636,527.00 |

Dated: June 19, 2025

WALKER, HAMILTON & KEARNS, LLP

By: _____
Walter H. Walker, III
Attorneys for Plaintiff

24 of 24

# Exhibit 1

Case 3:23-cv-03414-RFL    Document 203    Filed 06/20/25    Page 33 of 33
Case 5:20-cv-00416-JGB-SP    Document 188    Filed 02/21/24    Page 7 of 7    Page ID
#:4467
Case 1:21-cv-00378-KES-CDB    Document 174-5    Filed 04/25/25    Page 8 of 8

In sum, the Court **GRANTS** the Motion as follows:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 71 | $1,400.00 | $99,400.00 |
| John Fattahi | Attorney | 212.4 | $975.00 | $207,090.00 |
| Eric Valenzuela | Attorney | 44 | $800.00 | $35,200.00 |
| Renee Masongsong | Attorney | 70.1 | $800.00 | $56,080.00 |
| **SUBTOTAL** | | **395.5** | | **$397,770.00** |
| 1.5 Multiplier | | | | $198,885.00 |
| **TOTAL** | | | | **$596,655.00** |

###   III.    CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Motion and **AWARDS** Plaintiffs' counsel $596,655.00 in attorneys' fees.  The February 26, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**